UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS EDGAR CIFUENTES VELASQUEZ (A-Number: 213-106-047), | Case No.  1:26-cv-4193-DC-JDP |
| Petitioner, | |
| v.- | FINDINGS AND RECOMMENDATIONS |
| WARDEN OF THE MESA VERDE DETENTION FACILITY, | |
| Respondent. | |

Petitioner Santos Edgar Cifuentes Velasquez entered the United States no later than 2010 and was re-detained by ICE in 2026.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

No later than January 2010, petitioner entered the United States, was briefly detained by immigration officers, and then was released on his own recognizance.[1]  ECF No. 5 at 17.  There is

---

[1] Petitioner was previously ordered removed in 1998 and re-entered the country after presumably being removed.  ECF No. 5 at 17.  Petitioner alleges that he has lived in the United States continuously since 2006.  ECF No. 1 at 6.  Additionally, petitioner's RAP sheet includes an arrest from 2006.  *See* ECF No. 5 at 26.  This evidence supports the finding that petitioner entered

1

no allegation or evidence that petitioner has violated the terms of his release. Petitioner has received employment authorization and maintained employment since his release. *See* ECF No. 1 at 9, 13

Petitioner's RAP sheet includes arrests from between 1999 and 2016. *Id*. at 24-33. Many of the arrests stem from traffic violations. *See id*. Other incidents are as follows: a 2007 arrest for battery that did not result in a conviction; a 2007 arrest for resisting an officer, in connection with a traffic violation, that did not result in a conviction; and a 2008 conviction for fraud, giving false name or ID. *See id*. at 27-29.

In July 2022, petitioner was ordered removed. *Id*. at 17. Petitioner appealed that decision, and his appeal remains pending before the Board of Immigration Appeals. *Id*.; *see also* ECF No. 1 at 16. Accordingly, petitioner's removal order is not final. *See* 8 C.F.R. § 1241.1(a).

On March 5, 2026, petitioner was re-detained by ICE in Miami, Florida. ECF No. 5 at 17. ICE records indicate that petitioner "was encountered during a Violation—walking dog without a leash." *Id*. However, as noted, petitioner's RAP sheet does not include any arrests or convictions from after 2016, and there is no other evidence or allegation that petitioner violated the law leading up to his re-detention. Moreover, respondent does not address the alleged underlying violation that led to petitioner's encounter with law enforcement.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of

the United States in 2006. However, ICE records reflect that petitioner was detained and released in January 2010. *See id*. at 17. Although this factual dispute does not have any bearing on the merits of petitioner's claim, for purposes of my analysis, I assume that petitioner entered the United States in January 2010.

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates his Fifth Amendment Due Process rights.  ECF No. 1 at 6.  Notably, respondent offers little response to petitioner's due process claim.  Instead, it advances an argument premised on the assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 5 at 1-2.  In asserting this statutory argument, respondent ignores the cases from this District rejecting such an argument.  *See, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  Respondent does not explain what, if any, binding precedent supports its statutory position.  More fundamentally, respondent's focus is misplaced because it only address petitioner's due process argument through the lens of its statutory argument.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions

3

not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in January 2010. ECF No. 5 at 17. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over sixteen years. During that time, he has formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release over the sixteen years of his supervised release.  *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high.  Prior to releasing petitioner in 2010, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight.  *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").  Absent a bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest.  *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.")

(quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondent offers no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty.  *See id.*  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  Indeed, respondent has provided no information about the additional burden that would fall on it as a result of being required to provide a bond hearing.  *See* ECF No. 5.  "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner requests release.  ECF No. 1 at 7.  Respondent does not address this issue.  *See* ECF No. 5.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").  To satisfy due process, "the Court usually has held that the Constitution requires

6

some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).  Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, between his release in January 2010 and his re-detention in March 2026, there is no evidence or allegation that petitioner violated the terms of his release.  While respondent's RAP sheet provides some criminal history from that time period, his arrests mainly stem from traffic violations, and his RAP sheet does not include any criminal activity after 2016.  *See* ECF No. 5 at 24-33.

ICE records indicate that petitioner was re-detained in March 2026 after he "was encountered during a Violation—walking dog without a leash." *See id*. at 17.  However, as noted, there is no other evidence or allegation that petitioner violated any law leading up to his re-detention by ICE.  Moreover, respondent does not address the underlying activity that led to petitioner's re-detention.  *See* ECF No. 5.

Even if petitioner violated the law by walking a dog without a leash, there is no evidence, nor has respondent presented any argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing.  *See Zinermon*, 494 U.S. at 128.  Indeed, respondent does not argue that petitioner is a danger to the community or a flight risk; instead, respondent summarily states that petitioner "has a criminal history." *See* ECF No. 5 at 1.

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without

7

a pre-deprivation hearing.  *See Munaf*, 553 U.S. at 693.  Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante."  *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 213-106-047) from its custody.  Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing.  If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before an immigration judge at which the government shall bear the burden of justifying petitioner's detention by clear and convincing evidence.  This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Mesa Verde Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:     June 24, 2026     _____
                            JEREMY D. PETERSON
                            UNITED STATES MAGISTRATE JUDGE